# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| *In re:* | § | |
| | § | |
| POINT COM, LLC, | § | Case No. 18-10762-tmd |
| | § | (Chapter 11) |
| *Debtor* | § | |

### DEBTOR'S MOTION FOR AUTHORITY TO CONSUMMATE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, FREE AND CLEAR OF ALL LIENS AND OTHER INTERESTS, PURSUANT TO 11 U.S.C. §363(f), TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. §365, AND FOR OTHER RELIEF

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE:

POINT COM, LLC, the Debtor in Possession in the above-entitled and numbered Chapter 11 proceeding ("Debtor"), moves the Court to enter an order: a.) authorizing the Debtor to consummate the sale of substantially all its assets to TexHahn Media, Inc., d/b/a Hahn Public Communications, ("TexHahn"), the Successful Bidder at the auction conducted by this Court on August 29, 2018, or to TexHahn's assignee; b.) providing that such sale of the Debtor's assets be free and clear of all liens and other interests pursuant to Section 363(f) of the Bankruptcy Code; c.) providing that the Debtor be authorized to assume certain executory contracts and assign such contracts to TexHahn in connection with such sale, pursuant to Section 365 of the Bankruptcy Code; d.) providing that the Court approve all other aspects of the proposed sale to TexHahn, including TexHahn's assumption of and promise to pay, certain payroll obligations of the Debtor to its employees and providing that the Debtor pay certain cure amounts to executory contract counterparties; e.) that in the event TexHahn elects not to close the above-described purchase of assets and the above-described assignment of executory contracts from the Debtor, authorizing the Debtor to consummate the sale of substantially all its assets to PHP Alliance LLC

("PHP Alliance"), the Backup Bidder at the auction conducted by this Court on August 29, 2018, and in such event, that the Debtor and PHP Alliance be granted the same authority and rights, and subject to the same duties and obligations, as outlined in subparagraphs b.) through d.) above, with respect to a closing between the Debtor and TexHahn; f.) that in the order granting this Motion, whether approving a sale to TexHahn or to PHP Alliance, the Court waive the 14-day stay periods provided for under Bankruptcy Rules 6004(h) and 6006(d); and g.) for such other relief as the Court may deem appropriate under the circumstances of this case, to effectuate the proposed sale and to protect the interests of the estate and parties in interest, as permitted by Sections 105, 363, 365 and other provisions of the Bankruptcy Code. In support of such requested relief, the Debtor would show the Court the following:

1. This Chapter 11 proceeding was commenced by a voluntary petition filed on June 14, 2018 (the "Petition Date"). The Debtor continues to operate its business and manage its assets as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. The Debtor has all the rights, duties and powers of a trustee under § 1106 of the Bankruptcy Code, except as limited by 11 U.S.C. § 1107(a).

2. On August 20, 2018, the Debtor filed its Motion to Approve Bidding and Auction Procedures and Procedures for Assumption and Assignment (or Rejection) of Executory Contracts in Connection With the Proposed Sale of Substantially All of the Debtor's Assets [ECF Document No. 70] (the "Bid Procedures Motion"), asking this Court to establish certain bidding and auction procedures for the sale of the Debtor's assets, and certain "assumption procedures" for the assumption and assignment of, or the rejection of, certain executory contracts to which the Debtor is a party. The Debtor hereby incorporates by reference all factual statements and legal arguments set forth in the Bid Procedures Motion, as fully as if set forth

verbatim in this Motion, especially with respect to the nature of the Debtor's business, its business history, financial challenges and other reasons for pursuing a sale of its assets rather than attempting to reorganize its affairs in a more conventional way.

3. On August 22, 2018, after notice to parties in interest, the Court conducted a hearing on the Bid Procedures Motion and entered its Order Approving Bidding and Auction Procedures and Assumption Procedures in Connection With the Sale of Substantially All of the Debtor's Assets [ECF Document No. 76] (the "Bid Procedures Order").

4. Both before and after the entry of the Bid Procedures Order, a number of interested parties participated in a due diligence process to review the Debtor's assets, contracts and financial records, in an effort to determine whether such parties had an interest in participating in an auction process. Each of these interested parties was required to execute a form of Non-Disclosure Agreement. By the time this due diligence process came to a close, a total of eight (8) such interested parties signed Non-Disclosure Agreements and were given access to the due diligence materials.

5. On August 29, 2018, after notice to parties in interest, the Court conducted an in-court auction at which three bidders appeared and submitted bids for the purchase of the Debtor's assets, including the assignment of certain of the Debtor's executory contracts, and subject to the other terms and conditions specified in this Motion. At the end of the in-court auction, TexHahn was declared to be the Successful Bidder (as defined in the Bid Procedures Order), with a bid amount of Two Hundred, Three Thousand and No/100 Dollars ($203,000.00), and PHP Alliance was declared to be the Backup Bidder (as defined in the Bid Procedures Order), with a bid amount of One Hundred, Sixty-Five Thousand and No/100 Dollars ($165,000.00). Following the auction, on September 4, 2018, the Bankruptcy Court entered its

Order Confirming Auction Conducted in Open Court on August 29, 2018, and Setting Deadlines [ECF Document No. 92] (the "Order Confirming Auction"), declaring TexHahn to be the Successful Bidder, declaring PHP Alliance to be the Backup Bidder and establishing certain deadlines and conditions on the parties relating to consummating a sale. The term "Buyer", sometimes used later in this Motion, refers to TexHahn or its assignee, or to PHP Alliance, as the case may be, and means the entity that ultimately closes a sale with the Debtor with respect to the Debtor's Assets. Debtor's counsel is informed by TexHahn's counsel that TexHahn's assignee will be a newly-formed, special purpose entity that will be closely affiliated with TexHahn [i.e., either a subsidiary of TexHahn or an affiliate of TexHahn within the meaning of 11 U.S.C. §101(2)].

6.  For all the reasons previously stated in the Bid Procedures Motion and in various other motions previously filed and hearings previously conducted in this case—such reasons having to do with the Debtor's financial challenges and cash-flow difficulties—it is imperative the parties get to a closing of the sale as soon as possible. The best interests of the Debtor's creditors, employees and contract parties, will all be best served by a prompt closing, which will preserve the value of what's there to transfer to the Buyer. Although the Debtor intends to ask the Court to expedite the hearing on this Motion to September 12, 2018, a date previously discussed with the Court in the presence of other participating parties at the in-court auction on August 29, it is important to note that this sale process has played out over a substantial period of time, with plenty of notice to affected parties. The Debtor announced early on in this case, at one of the first cash collateral hearings, that the Debtor would be pursuing a sale. As previously described to the Court, the Debtor began the process of seeking a buyer for its assets even before this bankruptcy case was filed, with that process accelerating after the filing on June 14. The

Debtor's first motion seeking the establishment of bid procedures was filed on August 7, 2018. Copies of that motion, together with notice of the expedited hearing thereon, were served on parties in interest the following day. Even though that first effort was denied by the Court without prejudice, it served as notice to affected parties of the ongoing sale efforts by the Debtor and clarified for Debtor's counsel and other parties what kinds of sale procedures would be acceptable to the Court.

7. Now that a properly-vetted Successful Bidder and a properly vetted Backup Bidder have been designated, a prompt closing is in the best interests of all concerned.

8. Accordingly, the Debtor hereby asks the Court to authorize it to consummate a sale of substantially all of its assets, including but not limited to those assets specifically described on Exhibit "A" attached hereto, to TexHahn Media, Inc., d/b/a Hahn Public Communications, or its assignee, free and clear of all liens and other interests pursuant to 11 U.S.C. §363(f), with such liens and other interests, if any, attaching to the proceeds of sale to the same extent, and with the same priority and validity, as such liens and other interests now attach to the assets being sold.

9. In the event TexHahn files a written notice that it does not intend to not close a purchase of the Assets for the amount of its bid, as provided in the Order Confirming Auction, or in the event TexHahn fails to file a written notice that it does intend to close, the Debtor asks the Court to authorize it to consummate a sale of substantially all of its assets, including but not limited to those assets specifically described on Exhibit "A" attached hereto, to PHP Alliance LLC, free and clear of all liens and other interests pursuant to 11 U.S.C. §363(f), with such liens and other interests, if any, attaching to the proceeds of sale to the same extent, and with the same priority and validity, as such liens and other interests now attach to the assets being sold.

10. The assets being sold are subject to liens and other interests held by the following parties: a.) 338 Industries, LLC, a creditor that claimed a judicial lien (garnishment) against $33,519.54 in the Debtor's bank account on the Petition Date (the Debtor has consistently maintained throughout this case that this creditor's judicial lien is void or voidable; however, in the various cash collateral orders entered in this case, 338 Industries has been granted, as adequate protection for its disputed lien, a replacement security interest in the Debtor's post-petition accounts receivable, with the same priority as the judicial lien it held on the Petition Date, "to the extent and only to the extent such judicial lien is held to be valid, perfected, enforceable and non-avoidable."[1] ); b.) Mantis Financial, a small creditor with a security interest that is now owed only $510.44 and will be paid in full out of closing; and c.) Travis County, which has, or may have, a statutory lien for business personal property taxes for 2018 (any such statutory lien for 2018 business personal property taxes will remain attached to the assets sold until such taxes, if any, have been paid, and the Purchase Agreement provides that such taxes, if any will be paid by the Buyer when due and payable.

11. Exhibit "B" to the Bid Procedures Order, titled "Assumption Procedures" gives the Successful Bidder, TexHahn, a period of seven days following the auction, or until September 5, 2018, to "designate in writing, file with the Court and serve on any affected party a list of any executory contract(s) or unexpired lease(s) it wishes to reject in connection with the proposed sale." In the event TexHahn makes a timely election not to close the sale, the Order Confirming Auction gives the Backup Bidder, PHP Alliance, "until the date and time of the final hearing on the Debtor's sale motion [i.e, this Motion] to designate any executory contracts it

---

[1] See, e.g., Interim Order Granting Debtor's Motion for Authority to Use Cash Collateral and Setting Final Hearing, signed and entered June 19, 2018 [ECF Document No. 13], which also limited such replacement lien to "any actual diminution in collateral value" caused by the Debtor's use of cash collateral, and the Third Interim Order, signed and entered August 1, 2018 (ECF Document No. 49].

does not wish to have assigned to it in connection with the sale." For this reason, it is not possible to attach to this Motion a complete list of the executory contracts to be assumed and assigned in connection with the proposed sale. The Debtor makes reference to its "Notice of Executory Contracts and Unexpired Leases Which May be Assumed and Assigned…" [ECF Document No. 85], filed and served on August 24, 2018, for a list of all existing executory contracts identified by the Debtor that were eligible, as of that date, either for assumption and assignment by the Debtor, or for rejection by the Debtor. The only additional executory contract the Debtor may enter into prior to closing is a still-unsigned vendor contract with IT Hands, Inc., an independent contractor; if signed by the Debtor prior to closing, the Debtor anticipates such contract will be assumed and assigned to the Buyer in connection with the proposed sale.

12. In connection with the proposed sale, the Debtor hereby asks the Court to approve, pursuant to 11 U.S.C. §365, the Debtor's assumption of, and its assignment to the Buyer at closing, all of the Debtor's executory contracts referred to in Paragraph 11 of this Motion, other than the contracts selected by the Buyer for rejection by the Debtor, in consideration of the Buyer's assumption of and promise to perform the contracts so assumed and assigned. The Debtor also requests permission to pay, out of its proceeds at closing, any cure amounts owed to contract counterparties, as determined by the Court at the sale hearing.[2]

13. Since the date of the auction, TexHahn has asked that the Debtor agree to assign to TexHahn all of the Non-Disclosure Agreements described in Paragraph 4 of this Motion, above. Subject to the Court's approval, the Debtor has agreed to this request from TexHahn, so that TexHahn may enforce the provisions of these agreements if necessary. At this point, PHP

---

[2] Based on the information contained in the Debtor's filing referenced in Paragraph 11 of this Motion [ECF Document No. 85], the Debtor is aware of only one such cure amount to be paid out of closing, that being some $15,036.56 to Outserv.net, Inc., a contract for "Hosting Environment Support". Other cure amounts may be determined by the Court at the hearing on this motion, depending on what may be filed by contract counterparties, including Outserv.net, Inc., which could disagree with the "Cure Costs" amount proposed by the Debtor.

Alliance has not made a similar request with the respect to the Non-Disclosure Agreements. Debtor requests that it be allowed to convey the Debtor's interest in these agreements to the Buyer at closing.

14. As a condition of closing, the Buyer will assume certain payroll obligations of the Debtor to its employees. All prepetition payroll obligations of the Debtor, except those to the insider, Mr. Kahle, have been fully paid pursuant to an order of this Court. As of the date of filing this Motion, all post-petition payroll obligations to non-insider employees (including applicable payroll taxes) have also been fully paid. However, the Debtor's payroll is structured on an approximate two-week delay. For example, when the Debtor funds its September 15 payroll, it will be actually paying the employees their earnings for services performed on behalf of the Debtor between August 15 and 31. Thus, at whatever point the proposed sale closes, there will be an accrued payroll obligation to the Debtor's employees (soon to be the buyer's employees), which the buyer will have to satisfy as a condition of the sale.

15. The Debtor requests that in its written order granting this Motion, the Court waive the 14-day stay period provided for in Rule 6004(h), Federal Rules of Bankruptcy Procedure, with respect to orders authorizing the use, sale or lease of property, and the 14-day stay period provided for in Rule 6006(d), Federal Rules of Civil Procedure, with respect to orders authorizing the assignment executory contracts and unexpired leases.

FOR THE REASONS STATED ABOVE, the Debtor respectfully requests that the Court, after notice and a hearing, enter a written order: a.) authorizing the Debtor to consummate the sale of substantially all its assets to TexHahn or its assignee; b.) providing that such sale of the Debtor's assets be free and clear of all liens and other interests pursuant to Section 363(f) of the Bankruptcy Code; c.) providing that the Debtor be authorized to assume certain executory

contracts and assign such contracts to TexHahn in connection with such sale, pursuant to Section 365 of the Bankruptcy Code; d.) providing that the Court approve all other aspects of the proposed sale to TexHahn, including TexHahn's assumption of and promise to pay, certain payroll obligations of the Debtor to its employees and providing that the Debtor pay certain cure amounts to executory contract counterparties; e.) that in the event TexHahn elects not to close the above-described purchase of assets from the Debtor and the above-described assignment of executory contracts, authorizing the Debtor to consummate the sale of substantially all its assets to PHP Alliance LLC ("PHP Alliance"), the Backup Bidder at the auction conducted by this Court on August 29, 2018, and in such event, that the Debtor and PHP Alliance be granted the same authority and rights, and subject to the same duties and obligations, as outlined in subparagraphs b.) through d.) above, with respect to a closing between the Debtor and TexHahn; f.) that in the order granting this Motion, whether approving a sale to TexHahn or to PHP Alliance, the Court waive the 14-day stay periods provided for under Bankruptcy Rules 6004(h) and 6006(d); and g.) for such other relief as the Court may deem appropriate under the circumstances of this case, to effectuate the proposed sale and to protect the interests of the estate and parties in interest, as permitted by Sections 105, 363, 365 and other provisions of the Bankruptcy Code.

    / s / Weldon Ponder
B. WELDON PONDER, JR.
Attorney at Law
State Bar of Texas No. 16110400
4408 Spicewood Springs Road
Austin, Texas 78759
Phone 512.342.8222
Fax 512.342.8444
welpon@austin.rr.com

ATTORNEY FOR THE DEBTOR IN POSSESSION, POINT COM, LLC

## CERTIFICATE OF SERVICE

      I hereby certify that on September 4, 2018, a true and correct copy of the foregoing Motion was served via this Courts ECF/CM notification system to all parties registered to receive such notice, via email to the parties listed below:


Robert Clary, PLLC
405 Windward Dr.
Murphy, Texas 75094
rclary662@gmail.com
Counsel to 338 Industries, LLC d/b/a Stratified Data (filed Notice of Appearance)

Jason A. Starks
Assistant Attorney General, State of Texas
at bk-jstarks@oag.texas.gov and
at sherri.simpson@oag.texas.gov
Counsel to Texas Comptroller of Public Accounts (filed Notice of Appearance)

Robert Maris
Maris & Lanier, P.C.
3710 Rawlins Street, Suite 1550
Dallas, Texas 75219
at rmaris@marislanier.com
Counsel to interested party Hahn Public Communications (filed Notice of Appearance)

Morris D. Weiss
Tyler N. Lane
Waller Lansden Dortch & Davis, LLP
100 Congress Ave., Suite 1800
Austin, Texas 78701
at morris.weiss@wallerlaw.com
at tyler.layne@wallerlaw.com
Counsel to interested party PHP Alliance LLC (filed Notice of Appearance)

Deborah Bynum
Office of the U.S. Trustee
903 San Jacinto, Room 230
Austin, Texas 78701
Deborah.A.Bynum@usdoj.gov
Trial Attorney, United States Trustee


I further certify that when the Court has ruled on the Motion to Expedited Hearing, filed contemporaneously with this Motion, I will complete service by mail upon the entire service list for this case, and will file a Supplemental Certificate of Service.

                                                  / s / Weldon Ponder
                                                  B. Weldon Ponder, Jr.

# Assets

Substantially all of the assets of Point Com, LLC, including but not limited to:

**Tangible Assets**

5 office chairs
in Amelia Holcomb's possession:
    Dell laptop
    4 Asus 27-inch monitors
    1 Polycom 400 phone
    2 Microsoft keyboards
    2 docking stations
in Nicole Hackley's possession and storage:
    2 Dell laptops
    1 MacBook Pro
    2 docking stations
    2 Microsoft keyboards
    2 27-inch monitors
    1 Logitech HD webcam
    1 Logitech wireless mouse
    1 wireless headset for polycom phones
    1 Mac laptop power cord
    1 Visioneer Roadwarrior scanner
in Andrew Hamlin's possession:
    Dell laptop
    3 27-inch monitors
    1 laptop dock
    1 wireless keyboard
    1 wireless mouse
    1 Logitech HD webcam
    1 Polycom phone
in Steve Kahle's possession:
    Dell laptop
    2 27-inch monitors
    1 Microsoft keyboard
    1 wireless mouse
    1 Logitech HD webcam
    1 Polycom phone
    1 wireless headset
    1 laptop dock
    iPad 2.0

in storage at Steve Kahle's home:
    2 MacBook Pro
    2 Dell laptops (ea. missing hard drive)
    4 Polycom 400 phones
    2 Mac keyboards
    Apple mouse
    2 Logitech wireless mice PC
    1 Logitech HD WebCam C920
    3 Plantronics CS540 wireless headsets for Polycom phones
    3 Dell laptop power cords
    Cat five cable line of misc. lengths
    2 surge protectors
    1 Logitech wireless keyboard
    10 Dell docking stations
    Infocus DLP Projector
    2 Microsoft keyboards
    2 Dell wired mice
in Nick DeVries' possession:
    Dell laptop
    2 27-inch monitors
    1 laptop dock
    1 wireless keyboard
    1 wireless mouse
    1 Logitech HD webcam
    1 Polycom phone
in Kyle Nations' possession:
    2 27-inch monitors
    1 docking station
    1 Microsoft keyboard
in Charlie Chauvin's possession:
    MacBook Pro
    1 27-inch monitor
    Mac keyboard
    1 Apple mouse

in Jared Hill's possession:
    MacBook Pro
    1 – 27-inch monitor
    Mac keyboard
    2 Apple mice
    HDMI cable with a thunderbolt adapter attached

**Intangible Assets**

The following internet domain names, websites, web addresses and email addresses and accounts for:
    wlion.com
    whitelioninteractive.com
    wliondev3.com [SSL Enabled]
    thankstweeting.com
    wlstaging.com
    oneminutedigitalstrategy.com
    1-minutedigitalstrategy.com
    1minutedigitalstrategy.com

All confidentiality agreements received by Debtor from prospective bidders, and any other confidentiality agreements received by Debtor from other persons or entities

All agreements signed by current or former employees or contractors for Debtor's benefit concerning confidentiality, non-disclosure, non-solicitation and/or non-compete

All social media listings and accounts (such as Facebook)

All intellectual property assets, such as trademarks, applications for trademarks, copyrights, applications for copyrights, patents, applications for patents, trade secrets and confidential/proprietary materials and know-how

in Nicholas Kramer's possession:
    MacBook Pro
misc. items:
    3 corded mice
    1 wireless Logitech mouse
    2 Dell chargers

Tradenames/Assumed Names/d/b/a's: "White Lion Internet Agency", "White Lion", White Lion Interactive" and "White Lion Creative Group" and the right to use Debtor's name, Point Com, LLC or any variation of that name (provided, however, including this last item in the list of Assets is not intended to limit the Debtor's right to control the corporate entity itself, including the right to dissolve the entity in the future)

Cash on hand and in banks as of the Closing Date; all prepaid expenses, credits, advance payments, claims, security, refunds, rights of recovery, deposits

All of Debtor's rights under warranties and similar rights against third parties under warranties, indemnities related to any of the Assets

All books and records, including books of account, financial and accounting records, billing records, and accounts records

Accounts receivable; notes receivable as of the Closing Date

Prospective, former and current customer/client lists, information, and records; supplier lists, information and records; correspondence; customer accounts not evidenced by contract; mailing lists; and all other data and know-how of Debtor, in any form or medium wherever located

Front-end software for web design and source code; all other software; all software licenses

All advertising material, listings, supplies, "Yellow Page", "White Page" or similar listings

All telephone numbers (including fax), but excluding the cell phone number used by Steve Kahle)
All operations manuals; website designs, content and templates

Goodwill